Dye, J. (dissenting).
The Workmen’s Compensation Board has found as a fact, which has been affirmed in the court below, that the decedent in the course of his work as a piano finisher, and as a result of occupational exposure to, contact with and inhalation of benzol, or its preparations and/or compounds, contracted, became disabled from and died of chronic monocytic leukemia, an occupational disease within the provisions of the Workmen’s Compensation Law (§3, subd. 2, par. 8) contracted within five years previous to his death (§ 40).
At the hearing the medical experts gave conflicting opinions respecting the fact of causal relationship of death to the occupational exposure. The board, in the exercise of its authorized discretion, resolved such conflict in favor of claimant which, having been affirmed, we may not disturb (Workmen’s Compensation Law, § 20).
The sole question then is whether there is any substantial evidence in support of causal connection. I think there is.
*291 Dr. Reznikoff, an outstanding, nationally known hematologist, gave as his opinion that ‘ ‘ a person exposed to benzol may develop leukemia, certainly chronic myelocytic leukemia, probably other types of leukemia, I cannot tell you how much exposure it takes. I don’t think anybody knows, but we do know that the incidence of leukemia, especially chronic myelocytic leukemia, is quite high in patients who have been exposed to benzol. The only two causes we know of leukemia, are first, X-ray exposure, and secondly, benzol”, and when asked: “ you say it is possible'that this man’s leukemia resulted from his alleged exposure to inhalation of benzol or benzene 1 ” he answered: “ That is right.”
This is not a bare guess — a mere scintilla of proof—but a carefully considered answer to a comprehensive hypothetical question. It was an honest effort by a well-qualified doctor to give the board the benefit of his experience and observation in diagnosing and treating this baffling disease. He could not rule out benzol as a possible cause. He had observed that many persons suffering from this type of leukemia had a history of benzol exposure, which observation had been noted by other eminent authorities. Three other doctors disagreed with Dr. Reznikoff but that is not to say that he was wrong or that his opinion should be rejected. Probative acceptance does not depend on quantity.
We deal here with the evidentiary rules to be employed in the determination of a claim arising under the Workmen’s Compensation Law and are not bound by those applicable to the establishment of common-law liability.
Here, as in Matter of Zaepfel v. du Pont de Nemours & Co. (284 App. Div. 693, affd. 309 N. Y. 962), there is nothing irrational about the board’s choosing to accept Dr. Reznikoff’s opinion and conclusions. It is true that he did not express his opinion in positive, dogmatic language, nor did he need to in order to give it probative acceptance. A professional witness of the reputation and unquestioned, outstanding qualifications of a physician such as Dr. Reznikoff cannot be positive beyond any question of doubt. The medical men know better than anyone else the dangers of being dogmatic for every day the seemingly insoluble and unanswerable is solved and answered; for instance, in our time an answer has been found to tuberculosis, *292 polio and a host of other formerly dread diseases. In fact, in our time, silicosis has been classified as an occupational disease caused by exposure to an industrial hazard.
Here, there is uncontradicted proof of exposure to benzol. Here, as was pointed out in Matter of Zaepfel v. du Pont de Nemours & Co. (supra), which we approved, there is enough proof to satisfy the statutory requirements of causal connection.
Even though the appellants’ experts denied any causal relation between leukemia and inhalation of benzol in this case, they readily admitted that “ some experts and specialists and authorities * * * feel just the opposite ”. This points up the sharp conflict of medical opinion. “Neither opinion is certain nor incredible, and to adopt one and reject the other requires entry into a field of fact with power to weigh and balance testimony, a power we do not possess in compensation cases.” (Matter of Gioia v. Courtmel Co., 283 App. Div. 40, 42, motion for leave to appeal denied 306 N. Y. 985.)
This case is a good illustration of the delays that stand between a claimant and a final ruling. This man died in 1950 from exposure to a recognized industrial hazard in 1946 — and there is still no answer. This delay is no doubt attributable to the dispute between its carriers as to whether the loss should be borne by the company that was first or last on the risk in point of time. The board charged the award equally to both carriers. The second carrier failed to file timely notice of appeal. As a consequence of that default, it has paid its share. I see no good reason why the appellant carrier should not pay its apportioned share, since the board found as a fact that exposure occurred in both employments.
For these reasons, I would affirm the order appealed from, with costs.
Judges Fuld, Froessel and Burke concur with Judge Van Voorhis; Judge Dye dissents in an opinion in which Chief Judge Desmond concurs; Judge Foster taking no part.
Order reversed, the award of the Workmen’s Compensation Board annulled and the claim dismissed, without costs.